```
                 IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


  UNITED STATES OF AMERICA    :
                              :
           VS                 :
                              : NO. 09-CR-247
  ROBERT MERICLE              :



                     TRANSCRIPT OF PROCEEDINGS
                   OF ARRAIGNMENT AND GUILTY PLEA


     BEFORE:    HONORABLE EDWIN M. KOSIK
                United States District Judge


     DATE:      Wednesday, September 2, 2009


     PLACE:     United States District Court
                Middle District of Pennsylvania
                235 North Washington Avenue
                Scranton, Pa   18503



  A P P E A R A N C E S:

  For The Government:       GORDON ZUBROD, ESQ.
                              Assistant United States Attorney


  For Defendant:            WILLIAM WINNING, ESQ.
                            PAUL J. WALKER, ESQ.



                      LAURA BOYANOWSKI, RPR
                      OFFICIAL COURT REPORTER
```

17

1  extensive amount of time both investigating and researching the
2  law in this area. Referral fees are a common place practice.
3  They are a legal practice in real estate and in the building
4  market. Fee splitting between the parties, for example,
5  between Judge Ciavarella and Mr. Powell, that kind of fee
6  splitting is also a common practice in the real estate
7  business. As the Court would know, if someone buys a house and
8  there is a -- there is a realtor representing one party, a
9  realtor representing the other, they split the fee which, is in
10 essence a finder's fee.
11            THE COURT: I don't know that, but go ahead.
12            MR. ZUBROD: All right. This is not a kickback or a
13 bribe in any sense. It is a common practice. It is not a
14 legal quid pro quo. It is a common practice between
15 businessmen in real estate transactions. Mr. Mericle simply
16 paid a finder' fee to the judges in accordance with standard
17 practice. To him, his payment of the fee was what he had done
18 hundreds of times before and was not related to the office that
19 the judges held or any decisions by the judges. He had
20 contracted with a private party, Mr. Powell, to build a
21 business -- a private business. The judges steered Mr. Powell
22 to Mr. Mericle because he can build the building cheaper than
23 anyone else. In fact, he was the lowest bidder. That is why
24 Mr. Powell chose him. Had Mr. Powell simply paid the finder's
25 fee and given the money to Robert Powell to distribute as

18

directed by Mr. Ciavarella, there would have been no prosecution of Mr. Mericle. He had no knowledge of what happened to the money once he gave it to Mr. Powell. He did know that the money ultimately was going to go to Judge Ciavarella and later found out it was going also to Judge Conahan. The crime came when the Internal Revenue Service approached Mr. Mericle and asked about the finder's fee.

Mr. Mericle failed to disclose to the I. R. S. that he knew that the money was intended to be paid to Judge Ciavarella. By the time he appeared in the grand jury, Mr. Mericle was aware that the money was also going to Judge Conahan, it was being split between them. Knowing that, Mr. Mericle failed to disclose to the grand jury that he was aware who the ultimate recipients of that money were. That failure to disclose made him an accessory after the fact to the tax fraud perpetrated by Judges Conahan and Ciavarella.

This is the basis for the misprision charge. He failed to disclose what he knew when directly asked about it. The United States Attorney as part of the plea has required Mr. Mericle to pay every dime that he paid to Judges Conahan and Ciavarella to be paid to the children of Luzerne County. That was our idea. Regarding the convoluted nature of it, Mr. Mericle will represent to the Court that he understood this to be a fee splitting arrangement and that he did not know what happened once the money left him. He filled out the papers.

19

1  He had them signed. He was directed to have the payment made
2  to Mr. Powell and it was Mr. Powell's responsibility, his
3  understanding was, to make the distribution.
4         THE COURT: What you're suggesting is that any
5  relationship Mr. Mericle had to the juvenile centers that were
6  constructed by him or his company was entirely different than
7  any relationship that may have existed between Mr. Powell and
8  the two judges that you were referring to; is that correct?
9         MR. ZUBROD: That's correct, Your Honor. In fact,
10 Mr. Powell was paying money and he understood it to be a quid
11 pro quo that he would not get juveniles anymore if he didn't
12 pay up the money. And he paid over $700,000 for that purpose.
13        THE COURT: I want to emphasize that distinction
14 because it's my recollection that in the case of the two judges
15 you represented that there was a quid pro quo between Mr.
16 Powell and between the judges. That is not the case in the --
17 in this instance; is that correct?
18        MR. ZUBROD: That's correct, Your Honor. There's no
19 quid pro quo.
20        THE COURT: Anything else?
21        MR. ZUBROD: No, sir.
22        THE COURT: Mr. Mericle, you heard counsel for the
23 government tell us what their evidence would be in this case if
24 this case went to trial. Of course, if it did go to trial, the
25 judge would have to give some instruction to the jury. But I

```
                                                                    20
 1  first ask you is what he tells us represent your role in the
 2  offense that brings you here today?
 3          THE DEFENDANT: Yes, Your Honor.
 4  BY THE COURT:
 5  Q.   Before we go any further, I should tell you because it can
 6  certainly very important to a person like yourself that if we
 7  accept your plea here and adjudge you guilty of a felony, you
 8  stand to lose certain rights. You may lose the right to vote.
 9  You may lose the right to hold public office. In all events,
10  you will lose the right to possess a weapon for any purpose
11  whatsoever in the future. Do you understand that?
12  A.   I do, Your Honor.
13  Q.   The Court would have to tell the jury that the charge in
14  this case is based on the statute -- crimes code statute passed
15  by the Congress of the United States and that these events did
16  occur as outlined by counsel for the government. And the thing
17  that distinguishes an innocent or negligent or even a foolish
18  act from a criminal act is what goes on in an individual's
19  head. So the government would have to prove that you did
20  conceal and failed to disclose and that you did so knowingly,
21  and sometimes that is difficult to prove except by any words
22  that are spoken by an individual or by the circumstances in
23  which this occurs.
24       And I can tell you that if the jury decided to believe the
25  government's evidence, they could conclude that the government
```