UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA          :

            v.                    : NO.: 3:CR-09-272

MARK A. CIAVARELLA, JR.,          :      (Kosik, J.)

            Defendant.            :



GOVERNMENTS' BRIEF IN RESPONSE TO
DEFENDANT'S POST TRIAL MOTIONS




PETER J. SMITH
United States Attorney


GORDON A.D. ZUBROD
MICHAEL CONSIGLIO
WILLIAM S. HOUSER
Assistant U.S. Attorneys
Suite 311, 235 N. Washington Avenue
Scranton, PA 18503
(570-348-2800

## **TABLE OF CONTENTS**

Table of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.  Procedural History.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  Statements of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.  Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.  The Court did not Abuse its Discretion by Admitting
       Evidence of the Defendant's Failure to Recuse Himself
       From Civil Cases Involving Robert Mericle and Robert
       Powell. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.  The Court did not Abuse its Discretion by Excluding
       Evidence of a Purported Admission by Government Counsel. . . . . . . . . 8

    C.  The Jury's Guilty Verdicts on Counts One, Two and
       Twenty-One are not Against the Weight of the Evidence
       and are Supported by Sufficient Evidence. . . . . . . . . . . . . . . . . . . . . . 15

         1.  Count One. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

            a.  Wire Fraud. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

            b.  Money Laundering Conspiracy. . . . . . . . . . . . . . . . . . . . . 28

         2.  Count Two. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

         3.  Count Twenty-One.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

    D.  The Mail Fraud Counts of the Indictment are Consistent
       with the Supreme Court's Holding in <u>Skilling v. United States</u>. . . . . 39

i

E.  The Defendant is not Entitled to Judgment of Acquittal on
Counts One, Two and Twenty-One on Statute of Limitations
Grounds. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

1.  The Defendant has Waived a Statute of Limitations
Defense on Counts One, Two and Twenty-One. . . . . . . . . . . . . 46

2.  The Statute of Limitations did not Run on Counts
One, Two and Twenty-One. . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

F.  The Defendant's Motion for Recusal Should be Denied. . . . . . . . . . . 50

IV.  Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

# TABLE OF AUTHORITIES

**FEDERAL CASES**

Fiswick v. United States, 329 U.S. 211 (1946). . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

Glasser v. United States, 315 U.S. 60 (1942). . . . . . . . . . . . . . . . . . . . . . . . . . . 16

In re Kauffman, 675 F.2d 127(7th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . 45

Pivirotto v. Innovative Systems, Inc., 191 F.3d 344
    (3d Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Resolution Trust Corp. V. Fidelity and Deposit Co. Of Maryland,
    205 F.3d 615 (3d Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

Rhoades, Inc. v. United Air Lines, Inc., 340 F.2d 481
    (3d Cir. 1965). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Rozen v. Bezner, 996 F.2d 1527 (3d Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . 45

Salinas v. United States, 522 U.S. 52 (1997). . . . . . . . . . . . . . . . . . . . 35, 36, 38

Skilling v. United States, 130 S. Ct. 2896 (2010). . . . . . . . . . . . . . . . 19, 40, 42, 43

Spira v. Nick, 876 F. Supp. 533 (S.D.N.Y 1995). . . . . . . . . . . . . . . . . . . . . . . . . 44

United States v. Anguilo, 847 F.2d 956 (1st Cir. 1988). . . . . . . . . . . . . . . . . . . . 35

United States v. Ashworth, 836 F.2d 260 (6th Cir. 1988). . . . . . . . . . . . . . . . . . . 15

United States v. Bobb, 471 F.3d 491 (3d Cir. 2006). . . . . . . . . . . . . . . . . . . 4, 8, 16

United States v. Brennan, 326 F.3d 176 (3d Cir. 2003). . . . . . . . . . . . . . . . . . . . 16

iii

United States v. Console, 13 F.3d 641 (3d Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . 17

United States v. Coyle, 63 F.3d 1239 (3d Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . 16

United States v. Cruz, 568 F.2d 781 (1st Cir. 1978). . . . . . . . . . . . . . . . . . . . 35, 36

United States v. Greenridge, 495 F.3d 85 (3d Cir. 2007). . . . . . . . . . . . . . . . . . . 28

United States v. Jake, 281 F.3d 123 (3d Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . 48

United States v. Johnson, 302 F.3d 139 (3d Cir. 2002). . . . . . . . . . . . . . . . . 15, 48

United States v. Karlin, 785 F.2d 90 (3d Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . 46

United States v. Lacey, 219 F.3d 779 (8th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . 15

United States v. Lebovitz, 669 F.2d 894 (3d Cir. 1982). . . . . . . . . . . . . . . . . . . . 43

United States v. Maze, 414 U.S. 395 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

United States v. McKeon, 738 F.2d 26 (2d Cir. 1984). . . . . . . . . . . . . . . . . . . . . . 9

United States v. Morales, 902 F.2d 604 (7th Cir. 1990). . . . . . . . . . . . . . . . . . . . 15

United States v. Oliva, 46 F.3d 320 (3d Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . 46

United States v. Omoruyi, 260 F.3d 291 (3d Cir. 2001). . . . . . . . . . . . . . . . . . . . 29

United States v. Otto, 742 F.2d 104 (3d Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . 42

United States v. Pearlstein, 576 F.2d 531 (3d Cir. 1978). . . . . . . . . . . . . . . . . 5, 41

United States v. Quinn, 349 F. Supp. 232 (E.D. Wis.)
        affirmed 481 F.2d 1406 (8th Cir. 1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

United States v. Salerno, 937 F.2d 797 (2d Cir; 1991). . . . . . . . . . . . . . . . . . . . . . 9

iv

<u>United States v. Santos</u>, 20 F.3d 280 (7th Cir. 1994).. . . . . . . . . . . . . . . . . . . . . . . 15

<u>United States v. Steele</u>, 685 F.2d 793 (3d Cir. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

<u>United States v. Strauss</u>, 452 F.2d 375 (7th Cir. 1971). . . . . . . . . . . . . . . . . . . . . . 44

<u>United States v. Tiller</u>, 302 F.3d 98 (3d Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . 42

<u>United States v. Tykarsky</u>, 446 F.3d 458 (3d Cir. 2006). . . . . . . . . . . . . . . . . . . . 45

<u>United States v. Urban</u>, 404 F.3d 273 (3d Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . 17

<u>United States v. Wexler</u>, 838 F.2d 88 (3d Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . 16

<u>Whitfield v. United States</u>, 543 U.S. 209 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . 28

## FEDERAL STATUTES

18 U.S.C. § 371. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 666. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 33

18 U.S.C. § 1341. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 28, 33

18 U.S.C. § 1343. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 28, 33

18 U.S.C. § 1346. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 1951. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 33

18 U.S.C. § 1956. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 28, 29

18 U.S.C. § 1961. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 29

18 U.S.C. § 1962. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 16, 35

26 U.S.C. § 7206. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**FEDERAL RULES**

Fed. R.  Crim. P. 11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. Evid. 401. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. Evid. 403. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.    PROCEDURAL HISTORY

On January 26, 2009, the Defendant Mark Ciavarella, Jr. and his co-conspirator Michael Conahan were charged in a felony information with honest services wire fraud, in violation of Title 18, United States Code, §§ 1343 and 1346.  On February 12, 2009, the Defendants pleaded guilty to the charge in accordance with the terms of binding plea agreements entered with the Government under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. The Court reserved ruling on the proposed plea agreements pending review of a presentence investigation report.

On July 31, 2009, the Court rejected the binding plea agreements.  The Defendants moved to withdraw their guilty pleas on August 24, 2009.

On September 9, 2009, a federal grand jury in Harrisburg returned a forty-eight count indictment charging Conahan and Ciavarella with racketeering and other offenses.  The Defendants entered not guilty pleas on September 15, 2009.

The Defendants filed pre-trial motions on March 1, 2010. After briefing by the parties, these motions were denied by the Court on July 6, 2010.

On July 23, 2010, Co-defendant Michael T. Conahan pleaded guilty to a charge of RICO conspiracy.  On September 29, 2010, a superseding indictment

was returned against Mark A. Ciavarella, Jr.

On November 1, 2010, Defendant Ciavarella filed pre-trial motions relating to the superseding indictment. After briefing by the parties the Court denied those motions on December 15, 2010.

The trial of Mark A.Ciavarella, Jr. commenced on February 7, 2011 and ended on February 18, 2011. The jury found Ciavarella guilty of twelve charges, namely: racketeering, in violation of 18 U.S.C. § 1962(c) (Count One); racketeering conspiracy, in violation of 18 U.S.C. § 1962(d) (Count Two); four counts of honest services mail fraud, in violation of 18 U.S.C. §§ 1341 and 1346 (Counts Seven through Ten); money laundering conspiracy, in violation of 18 U.S.C. § 1956(h) (Count Twenty-One); conspiracy to defraud the United States, in violation of 18 U.S.C. § 371 (Count Thirty-Five); and, four counts of subscribing to a materially false tax return in violation of 26 U.S.C. § 7206(1) (Counts Thirty-Six through Thirty-Nine). Ciavarella was also ordered to forfeit $997,600.00.

II.    <u>STATEMENT OF FACTS</u>

The facts of this case are well known to the parties and to the Court. In the interest of brevity, the Government has not set forth a separate statement of the facts but rather has included relevant facts and references to the record in the Argument section of this brief.

III.  <u>ARGUMENT</u>

A.  <u>The Court Did Not Abuse Its Discretion By Admitting Evidence of
the Defendant's</u> Failure to Recuse Himself From Civil Cases
Involving Robert Mericle and Robert Powell

The Defendant argues the Court should not have permitted the government
to introduce evidence of the Defendant's failure to recuse himself in cases
involving Robert Mericle and Robert Powell.  <u>See</u> Defendant's Brief, pp. 1-3.  The
Defendant claims the evidence "did not have a tendency to make any fact of
consequence to the determination of the action more or less probable" and was
"more prejudicial than probative."  <u>See</u> Defendant's Brief, p. 2 citing Federal
Rules of Evidence 401 and 403.

A district court's decision to admit or exclude evidence at trial is reviewed
for abuse of discretion.  <u>United States v. Bobb</u>, 471 F.3d 491, 497 (3d Cir. 2006).
The Court clearly did not abuse its discretion by admitting the contested evidence
since, as the Court properly ruled at trial, the Defendant's failure to recuse himself
from matters involving Robert Mericle and Robert Powell constituted intrinsic
evidence of the Defendant's guilt on the honest services fraud counts of the

Superseding Indictment.[1]

The Defendant's argument that the evidence was not relevant neglects the fact that, as part of the honest services wire fraud and mail fraud charges, the government was required to prove not only bribes or kickbacks but also that the bribes or kickbacks were part of a "scheme or artifice to defraud."  Proof of the allegation of the Superseding Indictment that the defendant failed to disqualify himself from official action where a conflict of interest existed was one way the government proved his intent to defraud.

Proof is required of a specific intent and the Defendant must either have devised the fraudulent scheme himself or have willfully participated in it with knowledge of its fraudulent nature.  United States v. Pearlstein, 576 F.2d 531, 537 (3d Cir. 1978) (citations omitted).  Thus, evidence of concealment of material facts was pertinent to a determination of an intent to defraud on the defendant's part.  Proof of the defendant's failure to disqualify himself despite an affirmative duty to do so was one of the ways the Government properly proved the Defendant's willful participation in the fraudulent scheme.  The law is clear that the failure to

---

[1]This same issue was raised and briefed in connection with a pre-trial motion in limine filed by the Defendant.  The Court overruled the motion at trial, noting the Court's finding that the evidence was intrinsic evidence of the offenses charged.  See Trial Transcript (hereinafter referred to as "Tr."), 2/11/11, p. 91.

disclose information may constitute a fraudulent representation if a defendant is under a legal, professional or contractual duty to make such a disclosure, the defendant actually knew such disclosure ought to be made, and the defendant failed to make such disclosure with the intent to defraud.  See, e.g., Third Circuit Model Jury Instruction 6.18.1341-1. The defendant himself admitted at trial that he had an affirmative duty to disqualify himself in cases involving Mericle business entities and Robert Powell and that he made an intentional, conscious decision not to do so.  See Tr. 2/15/11, pp. 178-79.

The admitted evidence was material to prove the allegations of the Superseding Indictment that it was part of the scheme and artifice to defraud that the Defendant and Michael Conahan "violated their duties of independence, impartiality and integrity in the exercise of their discretionary actions on behalf of the Court of Common Pleas for Luzerne County by failing to recuse themselves from acting in matters in which they had a material conflict of interest and in failing to disclose to parties appearing before the court...their conflict of interest and their financial relationship with [Robert Powell, Robert Mericle], PA Child Care and Western PA Child Care, which were material matters." See Superseding Indictment, ¶ 81.

The admitted testimony also was material to prove the allegation of the

6

Superseding Indictment that the Defendant and Michael Conahan engaged in a scheme and artifice to defraud the citizens and the judiciary of their right to the honest services of the defendant by "knowingly soliciting, extorting and accepting bribes and kickbacks as part of a generalized agreement to improperly exert influence on behalf of the bribe and kickback payers as specific opportunities arose to do so. <u>See</u> Superseding Indictment, ¶ 75. The testimony of each attorney witness revealed that the Defendant and Conahan not only failed to recuse themselves but that they also improperly exerted influence on behalf of Powell and Mericle by taking action favorable to Powell and Mericle. <u>See</u> Testimony of Stephen Carpenito, Tr. 2/11/11, pp. 88-99 (Defendant Ciavarella did not recuse himself in January of 2007 from a matter involving a Mericle business entity, "downplayed" his relationship with Mericle, told the attorney "he was going to grant this injunction" even before the attorney finished presenting evidence, and enjoined PennDOT from issuing a permit to the attorney's client even though PennDOT was not a party to the litigation); Testimony of Timothy Keating, Tr. 2/11/11, pp. 99-109 (During litigation in December of 2004, Michael Conahan did not recuse himself from a matter involving PA Child Care, granted injunctive relief in favor of PA Child Care and sealed the record); Testimony of Lawrence Durkin, Tr. 2/11/11, pp. 116-127 (Defendant Ciavarella did not recuse himself in

7

September of 2004 from a matter involving a Mericle business entity and granted

injunctive relief in favor of Mericle even though the property in dispute was not

located in Luzerne County); Testimony of Jeffrey McCarron, Tr. 2/11/11, pp. 128-

156 (Defendant Ciavarella did not recuse himself from a litigation matter in

January of 2008 in which Robert Powell acted as plaintiff's attorney, lied about

the nature of his relationship with Powell, acted unusually in that Defendant

Ciavarella "clearly favored the other side,"  "would not engage in legal discussion

about the defenses and the issues," and ruled on Powell's motions without ruling

on the opposing side's motions).

>    B.    The Court Did Not Abuse Its Discretion By Excluding Evidence of a
>          Purported Admission By Government Counsel

The Defendant argues the Court should have permitted the Defendant to

introduce evidence in his case-in-chief of statements made by government counsel

during the guilty plea proceeding of Robert Mericle.  See Defendant's Brief, pp. 3-

9.  The Defendant claims the proffered statements amounted to an admission by a

party opponent within the meaning of Federal Rule of Evidence 801(d)(2).  Id. at

p. 5.

A district court's decision to admit or exclude evidence at trial is reviewed

for abuse of discretion.  United States v. Bobb, 471 F.3d 491, 497 (3d Cir. 2006).

8

The Court clearly did not abuse its discretion by excluding the contested evidence since, as the Court properly ruled at trial, the statements of government counsel related only to the intent of Robert Mericle and not to the intent of Robert Powell, Michael Conahan and Mark Ciavarella.[2]

Statements of counsel offered under Rule 801(d)(2) must be "clear and unambiguous statements of fact."  See Pivirotto v. Innovative Systems, Inc., 191 F.3d 344, 358 (3d Cir. 1999), citing United States v. McKeon, 738 F.2d 26, 30 (2d Cir. 1984), Rhoades, Inc. v. United Air Lines, Inc., 340 F.2d 481, 484 (3d Cir. 1965).  One Court of Appeals has suggested a three-part test to determine whether prior statements by a prosecutor (from an opening statement in a prior trial) were admissible against the government:

> First, "the district court must be satisfied that the prior argument involves an assertion of fact [clearly] inconsistent with similar assertions in a subsequent trial." Second, the court must determine "that the statements of counsel were such as to be the equivalent of testimonial statements" made by [the party].  Last, the district court must determine by a preponderance of the evidence that the inference that the proponent of the statements wishes to draw "is a fair one and that an innocent explanation for the inconsistency does not exist."

---

[2]This same issue was raised and briefed in connection with a pre-trial motion in limine filed by the government.  The Court properly found at trial that the statements of government counsel made during the Mericle plea colloquy were made to clarify the mental state of Robert Mericle and did not relate to the intent of Robert Powell or the other participants.  See Tr. 2/14/11, pp. 82-84.

United States v. Salerno, 937 F.2d 797, 811 (2d Cir. 1991), rev'd on other grounds, 505 U.S. 317 (1992) (quoting United States v. McKeon, 738 F.2d 26, 33 (2d Cir. 1984).

The statements of government counsel during the Mericle plea colloquy were not "clear and unambiguous statements of fact." Similarly, the statements are not "[clearly] inconsistent with similar assertions in a subsequent trial." Nor can government counsel's statements be interpreted as "equivalent to testimonial statements." Moreover, given the government's consistently articulated theory that Robert Powell, Michael Conahan and Mark Ciavarella intended the Mericle payments as kickbacks/bribes, the inference that the defendant wished to draw was unfair and would preclude an innocent explanation for any apparent inconsistency.

During the Mericle plea colloquy, government counsel had the following discussion with the Court:

* * *

> MR. ZUBROD: ...Referral fees are a common place practice. They are a legal practice in real estate and in the building market. Fee splitting between the parties, for example, between Judge Ciavarella and Mr. Powell, that kind of fee splitting is also a common practice in the real estate business. As the Court would know, if someone buys a house and there is a - - there is a realtor representing one party, a realtor representing the other, they split the fee which, is in essence a finder's fee.
>
> THE COURT: I don't know that, but go ahead.

10

> MR. ZUBROD: All right.  This is not a kickback or a bribe in any sense. It is a common practice. It is not a legal (sic) quid pro quo. It is a common practice between businessmen in real estate transactions. Mr. Mericle simply paid a finder' (sic) fee to the judges in accordance with standard practice. To him, his payment of the fee was what he had done hundreds of times before and was not related to the office that the judges held or any decisions by the judges.  He had contracted with a private party, Mr. Powell, to build a business - - a private business. The judges steered Mr. Powell to Mr. Mericle because he can build the building cheaper than anyone else. In fact, he was the lowest bidder.  That is why Mr. Powell chose him.

Transcript of Proceedings of Arraignment and Guilty Plea of Robert Mericle,

September 2, 2009, p. 17.

The statements by government counsel did not constitute an admission that the payments by Robert Mericle were not kickbacks or bribes as to the involvement of Robert Powell, Michael Conahan and Mark Ciavarella.  It is noted that government counsel's statement, "this is not a kickback or a bribe in any sense," refers to the "practice" of paying a finder's fee, not to the specific payments in this case.  This is clear from the context provided by the statement that immediately preceded it ("if someone buys a house and there is a - - there is a realtor representing one party, a realtor representing the other, they split the fee which, is in essence a finder's fee") and the statement that immediately followed it ("It is a common practice.")

11

Government counsel's statement, "Mr. Mericle simply paid a finder's fee to the judges in accordance with standard practice," refers to the government's understanding, on the date of the plea, of Mericle's intent, as expressed by Mericle, for making the payments. That the statement refers to Mericle's intent only, and not to the intent of Robert Powell, Mark Ciavarella and Michael Conahan, is evidenced by government counsel's immediate reference to Mericle's state of mind: "**[t]o him**, his payment of the fee was what he had done hundreds of times before and was not related to the office that the judges held or any decisions by the judges." See Transcript, p. 17 (emphasis added).

The fact that government counsel's statement referred to Mericle's intent only, and not to the intent of Powell, Conahan and Ciavarella is also evidenced by a later exchange between government counsel and the Court:

> THE COURT: What you're suggesting is that any relationship Mr. Mericle had to the juvenile centers that were constructed by him or his company was entirely different than any relationship that may have existed between Mr. Powell and the two judges that you were referring to; is that correct?
>
> MR. ZUBROD: That's correct, Your Honor. In fact, Mr. Powell was paying money and he understood it to be a quid pro quo that he would not get juveniles anymore if he didn't pay up the money. And he paid over $700,000 for that purpose.

Transcript, p. 19.

12

It is important to remember that, since Mericle was pleading guilty to misprision of a felony for failing to report a tax crime, the government did not have to prove Mericle's intent to pay a kickback/bribe to the judges. For purposes of the plea, there was no need for the government to contest Mericle's claims that he intended the payments as finders' fees.

The government has consistently taken the position that Robert Powell, Michael Conahan and Mark Ciavarella intended the Mericle payments as kickbacks/bribes and that the convoluted financial transactions they initiated to hide the payments are evidence of their intent. For example, even the original Information filed in this case made clear the government's position that the Mericle monies were part of a kickback/bribery scheme. The Information alleged that "[i]n furtherance of the scheme and artifice to defraud, the defendants Michael T. Conahan and Mark A. Ciavarella, Jr. abused their positions as judges of the Court of Common Pleas for Luzerne County by accepting compensation from individuals and organizations doing business with the Court." See Information, ¶ 4. Referring to a portion of the Mericle money, the Information alleged the judges "arranged to receive a payment of $997,600 in connection with the roles they played as judges in accomplishing the construction of the PA Child Care juvenile detention facility." See Information, ¶ 11. The fact that all of the Mericle monies

13

were included in the kickback/bribery scheme was made plain by the inclusion of those monies in allegations describing the scheme.  See Information, ¶ 5 ("[T]he defendants...abused their positions and violated the fiduciary duty they owed to the citizens of the Commonwealth of Pennsylvania and to the Judiciary of the Commonwealth of Pennsylvania by secretly deriving more than $2,600,000 in income, in addition to the compensation to which they were lawfully entitled, in exchange for official actions and anticipated official actions.").  The Information made clear that the official actions from which the judges derived improper income included "facilitating the construction of juvenile detention facilities and an expansion to one of those facilities by PA Child Care and Western PA Child Care, LLC." See Information, ¶ 5.

The Indictment, returned seven days after the Mericle plea, contains allegations consistent with the allegations cited above. See Indictment, ¶¶ 4, 5, 11, 70 and 73.  The Superseding Indictment continued this consistent theme.  See e.g. Superseding Indictment, ¶¶ 4, 5, 11, 70, 72, and 75.

The government has consistently and clearly articulated a kickback/bribery theory of prosecution as it relates to the intentions of Robert Powell, Michael Conahan and Mark Ciavarella vis-a-vis the Mericle money and the statements of government counsel during the Mericle plea colloquy are consistent with that

14

theory.  Thus, the Defendant was properly precluded from introducing the

statements as admissions of a party opponent at trial.

> C.    The Jury's Guilty Verdicts on Counts One, Two and Twenty-One Are Not Against the Weight of the Evidence and are Supported By Sufficient Evidence

As part of his motion for a new trial under Federal Rule of Criminal

Procedure 33, the Defendant argues that the jury's guilty verdicts on Counts One,

Two and Twenty-One of the Indictment are against the weight of the evidence.

See Defendant's Brief, pp. 10-14.  In support of his Rule 29 motion for judgment

of acquittal, he argues that the evidence was insufficient on those same counts.  Id.

A district court may grant a new trial under Rule 33 based on the "weight of

the evidence" under the following circumstances:

> A district court can order a new trial on the ground that the jury's verdict is contrary to the evidence only if it "believes that 'there is a serious danger that a miscarriage of justice has occurred - that is, that an innocent person has been convicted.'" United States v. Santos, 20 F.3d 280, 285 (7th Cir. 1994)(quoting United States v. Morales, 902 F.2d 604, 606 (7th Cir. 1990)). Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case.  See United States v. Lacey, 219 F.3d 779, 783-84 (8th Cir. 2000); United States v. Ashworth, 836 F.2d 260, 266 (6th Cir. 1988).

United States v. Johnson, 302 F.3d 139, 150 (3d Cir. 2002).  Thus, "[m]otions for

a new trial based on the weight of the evidence are not favored.  Such motions are

15

to be granted sparingly and only in exceptional cases." <u>United States v. Brennan</u>,

326 F.3d 176, 189 (3d Cir. 2003)(quoting <u>Government of Virgin Islands v.</u>

<u>Derricks</u>, 810 F.2d 50, 55 (3d Cir. 1987).

A claim of insufficiency of the evidence at trial also places a very heavy

burden on the proponent: the conviction must stand if a rational trier of fact could

have found the defendant guilty beyond a reasonable doubt and if the verdict is

supported by substantial evidence. <u>United States v. Bobb</u>, 471 F.3d 491, 494 (3d

Cir. 2006) citing <u>United States v. Coyle</u>, 63 F.3d 1239, 1243 (3d Cir. 1995). The

prosecution may bear this burden entirely through circumstantial evidence. <u>Id.</u>

citing <u>United States v. Wexler</u>, 838 F.2d 88, 90 (3d Cir. 1988). When sufficiency

of the evidence at trial is challenged, a court must view the evidence in the light

most favorable to the government. <u>Glasser v. United States</u>, 315 U.S. 60, 80

(1942).

### 1.    Count One

Count One of the Indictment charges that Mark Ciavarella participated in

the conduct of an enterprise's affairs through a pattern of racketeering activity, in

violation of Title 18, United States Code, § 1962(c). To establish a § 1962(c)

RICO violation, the government must prove the following elements: "(1) the

existence of an enterprise affecting interstate commerce; (2) that the defendant

16

was employed by or associated with the enterprise;(3) that the defendant

participated, either directly or indirectly, in the conduct or affairs of the enterprise;

and (4) that he or she participated through a pattern of racketeering activity."

United States v. Urban, 404 F.3d 754, 769 (3d Cir. 2005), citing United States v.

Irizarry, 341 F.3d 273, 285 (3d Cir. 2003)(quoting United States v. Console, 13

F.3d 641, 652-653 (3d Cir. 1993).

The Defendant does not challenge the weight or sufficiency of evidence on

the first three elements of the RICO violation.  Rather, he focuses his argument on

the last element, the requirement that the government prove a pattern of

racketeering activity.  The Defendant argues that, even under an extremely

deferential standard of review, the guilty verdict on Count One is invalid since,

according to him, none of the acts which formed the basis for the pattern of

racketeering activity were illegal.  See Defendant's Brief, pp. 11-12.[3]  He claims

simply that "[a]ll of the money transferred, according to Trial testimony came from

---

[3]At page 10 of his brief, the Defendant incorrectly asserts that the jury found he committed three honest services wire fraud predicate acts of racketeering.  In fact, the jury found that he committed two charged racketeering acts: three acts of honest services wire fraud relating to wire transfers totaling $997,600 as charged in racketeering act one (any one of which constituted racketeering act one), and one racketeering act of money laundering conspiracy as charged in racketeering act thirteen.  See Tr. 2/18/11, pp. 5-6, 11; Superseding Indictment, paragraphs 29-33.

what Government witness Robert Mericle testified was a finder's fee provided to Mr. Ciavarella." Id. at p. 10.

The defendant bases his entire argument on the flawed assumption that the acts and intent of Robert Mericle to pay a "finder's fee" of $997,600 to Mark Ciavarella in late January, 2003, were the only acts and intent that are relevant to Racketeering Act One, the honest services wire fraud predicate act which the jury found the Defendant committed.  In fact, the trial evidence established that Mark Ciavarella, the juvenile court judge for Luzerne County,  participated in a wire fraud scheme, as charged in Racketeering Act One of Count One, with Michael Conahan, the President Judge of Luzerne County, and Robert Powell, a trial attorney who appeared before both Judge Conahan and Judge Ciavarella and who was one of the owners of a private juvenile detention facility that stood to reap millions of dollars in payments from Luzerne County in the months following the "finder's fee" payment.  In fact, Powell's business entities PA Child Care, Western PA Child Care and Mid-Atlantic Youth Services were paid $30,332,465 by Luzerne County for juvenile detention and related services during the years 2003-2006.  (Tr. 2/10/11, pp. 162-63).  The trial evidence also demonstrated that Conahan and Ciavarella conspired to launder the proceeds of specified unlawful

18

activity as charged in Racketeering Act Thirteen of Count One, thereby

establishing a "pattern of racketeering" within the meaning of the RICO statute.[4]

### a. Wire Fraud

The jury's finding that the Defendant committed the offense of wire fraud as

charged in Racketeering Act One of Count One was not against the weight of the

evidence and is also supported by sufficient evidence.

The elements of honest services wire fraud are:

First: That Mark Ciavarella knowingly devised a scheme to defraud the
public of its right to the honest services of Mark Ciavarella, through bribery
or kickbacks, and by materially false or fraudulent pretenses,
representations or promises or wilfully participated in such a scheme with
knowledge of its fraudulent nature;

Second: That Mark Ciavarella acted with the intent to defraud.

Third: that in advancing, furthering, or carrying out the scheme, Mark
Ciavarella transmitted any writing, signal, or sound by means of a wire,
radio, or television communication in interstate commerce or caused the
transmission of any writing, signal, or sound of some kind by means of a
wire, radio, or television communication in interstate commerce.

See Third Circuit Model Jury Instruction, 6.18.1343 (modified to conform with the

dictates of Skilling v. United States, 130 S. Ct. 2896 (2010)).

_____

[4]"A "pattern of racketeering activity" is defined as "requir[ing] at least two
acts of racketeering activity, one of which occurred after the date of this chapter
and the last of which occurred within ten years...after the commission of a prior act
of racketeering activity."  See 18 U.S.C. section 1961(5).

With regard to the first element's requirement that the scheme to defraud be carried out through "bribery or kickbacks, " the Court gave a detailed instruction to the jury on the meaning of "bribery" and "kickbacks" which included the following instruction:

> "Bribery" and "kickbacks" involve the exchange of a thing or things of value for official action by a public official, in other words, a quid pro quo, and you heard that statement means this for that. Bribery and kickbacks also include offers and solicitations of things of value in exchange for official action. That is, for the payor, bribery and kickbacks in the offer or agreement to provide a thing of value to a public official in exchange for official action, whether or not the public official actually accepted the thing of value or agreed to perform their official action. For the public official, bribery and kickbacks include the public official's solicitation or agreement to accept a thing of value in exchange for official action.

> * * *

> Bribery and kickbacks require the intent to effect an exchange of money or other thing of value for official action, but each payment need not be correlated with a specific official act. The requirement that there be payment of a thing of value in return for the performance of an official act is satisfied so long as the evidence shows a course of conduct of things of value flowing to a public official in exchange for a pattern of official action favorable to the donor.

> In other words, the intended exchange in bribery can be this for this or these for those or this for that. Further, it's not necessary for the government to prove that the defendant intended to perform a set number of official acts in return for the payments. All that must be shown is the payments were made with the intent of securing a specific type of official action in return. For example, payments may be made with the intent to retain the official's services as a needed base –on a needed basis that

20

whenever the opportunity presents itself the public official would take specific action on the giver's behalf. It is not a defense to claim that a public official would have lawfully performed the official action in question even without having accepted a thing of value.

* * *

Official acts include the decisions or actions generally expected of the public official. In addition, official action includes the exercise of both formal official influence such as a judge's performance of duties in court proceedings and informal official influence such as a judge's behind-the-scenes influence on other judges or employees of the judiciary.

* * *

Tr. 2/16/11, pp. 74-77.

There was substantial evidence presented at trial to support the jury's

finding on the first element of honest services wire fraud charged as Racketeering

Act One of Count One.[5]  Robert Powell was one of the owners of a juvenile

detention facility that stood to gain millions of dollars in income from Luzerne

County.  Powell was also a trial attorney who appeared before Judge Michael

Conahan and Judge Mark Ciavarella.  (Tr. 2/9/11, pp. 107-08, 110).  As early as

December of 2001, the evidence showed a plan had been hatched for kickbacks

and bribes to be paid through Powell to Conahan and Ciavarella.  On Christmas

---

[5]The evidence and arguments presented in this brief for the purpose of responding to the Defendant's post-trial motions are only examples of the evidence and arguments that support the verdict are not necessarily the only evidence and arguments that support it.

21

Eve of that year, Conahan told Powell that, once the PA Child Care facility was built, "we are going to have to do something to take care of Mark," which Powell understood to mean that "it was going to be some financial requirement to take care of Mark." See Tr. 2/9/11, pp. 127-28.

As shown by the evidence, the scheme involved payment of bribes and kickbacks to both Conahan and Ciavarella for their official actions; Ciavarella himself was the person responsible for directing the bribe and kickback payments to Conahan.

For example, on or about July 12, 2001, Robert Mericle told Mark Ciavarella that a $1,000,000 referral fee was built into the PA Child Care construction costs and that, if anyone deserved the fee, it was Ciavarella. (Tr. 2/9/11, pp. 19-22). Ciavarella agreed and directed Mericle to pay the fee to Robert Powell and that Ciavarella would work it out with Powell. (Tr. 2/9/11, pp. 22-23). Payment of the referral fee to Ciavarella was not automatic: it would be made only after completion of construction of the detention facility and after Mericle received final payment for construction. (Tr. 2/9/11, p. 25). A payment of $997,600 was ultimately passed by Robert Mericle through Robert Powell and Robert Matta, Esq. (Tr. 2/9/11, p. 27). Mericle gave no indication in his trial testimony that Conahan was entitled to any portion of the fee, rather he believed

22

Ciavarella was entitled to the fee since "I would not have been doing the job for PA Child Care if it was not for the referral Mark gave me to Bob Powell." (Tr. 2/9/11, p. 22). Mark Ciavarella acknowledged at trial that Mericle did not know Conahan received a portion of the $997,600 and that Ciavarella alone decided to make payment to Conahan. (Tr. 2/15/11, pp. 103-04).

The trial evidence established that bribes and kickbacks were paid to Conahan, through Powell, at the direction of Ciavarella in exchange for Conahan's official acts which permitted Ciavarella to collect the "referral fee" from Mericle. For example, construction of the PA Child Care juvenile detention facility was not possible without financing. (Tr. 117-118). Sometime before July 11, 2001, Powell told Conahan and Ciavarella that "somebody was going to have to step up to the plate and do something or there would be no facility because we wouldn't get the funds to build it." (Tr. 2/9/11, p. 118-119). After speaking with Mark Ciavarella and Michael Conahan, Robert Powell obtained a commitment from Conahan in approximately July of 2001, the same month Mericle told Ciavarella that Ciavarella deserved a referral fee, that Conahan would sign a placement guarantee agreement once Conahan became President Judge of Luzerne County in January of 2002. (Tr. 2/9/11, pp. 117-120). The project did not go forward while the parties waited for Conahan to become president judge and then, as a result of

23

Conahan's signing of the Placement Guarantee Agreement in January of 2002, PA

Child Care was able to obtain construction financing and the facility was

constructed. (Tr. 2/9/11, pp. 120-121).   As noted above, the construction of the

facility and Mericle's receipt of payment were pre-conditions to Ciavarella's

receipt of the "referral fee."

Similarly, in the months leading up to PA Child Care's opening in February

of 2003, Conahan took steps to effectively close the county-run Luzerne County

Juvenile Detention Facility in preparation for the opening of the PA Child Care

Facility in February of 2003. (Tr. 2/9/11, p. 123).  Conahan ordered that the

license for the county-run facility be returned to the state.  (Tr. 2/9/11, 125).

Ciavarella and Conahan both publicly promoted the building of the new facility

and the closing of the county-run facility; Ciavarella's  staff helped PA Child Care

set up interviews with the employees of the county-run facility so PA Child Care

could hire the best employees. (Tr. 2/9/11, p. 123).

The foregoing direct and circumstantial evidence clearly supports the jury's

finding as to the first element of honest services wire fraud since substantial

24

evidence showed that the monies paid to Conahan, through Powell, at the direction of Ciavarella were kickbacks and bribes for his official actions.[6]

Substantial evidence also supported the jury finding on the second element of honest services wire fraud since the evidence showed that Ciavarella, acting in concert with Conahan, acted with an intent to defraud. It is undisputed that Conahan and Ciavarella caused materially false statements to be made and caused multiple financial transactions to be conducted to conceal the money they received from the $997,600 payment. For instance, Powell was instructed by Conahan to sign a fraudulent document that made it appear as if the first payment of $997,600

---

[6]As to Robert Mericle, the Defendant argues "[n]ot only did the Government present no evidence of a bribe or kickback, it presented no evidence of any incentive for Mericle to pay Ciavarella a bribe or kickback. It would be impossible for Ciavarella to do anything for Mericle to assist him." See Defendant's Brief, p. 12. This argument ignores a separate theory under which the evidence established that Ciavarella committed honest services wire fraud in connection with the wire transfers of the $997,600 "referral fee." That theory is that, even if Mericle viewed the payment as a lawful referral fee, Ciavarella's instruction for Mericle to pay it through Powell was given to make it appear as if Mericle had no financial relationship with Ciavarella. The concealment of the financial relationship between Mericle and Ciavarella furthered an on-going bribery scheme between Mericle and Ciavarella under which Mericle paid a series of bribes to Ciavarella for favorable treatment when Mericle business entities appeared before Judge Ciavarella in litigation. The trial evidence showed that Mericle paid Judge Ciavarella $5,000 in cash every year at Christmas (Tr. 2/9/11, p. 46), that Mericle entities received favorable treatment from Ciavarella in litigation (Tr. 2/11/11, pp. 88-89, 116-127), and that Ciavarella concealed his relationship with Mericle and his receipt of those payments. (Tr. 2/8/11, pp. 105-107; Tr. 2/11/11, pp. 88-99, 116-127).

was being made by Mericle to Powell (Tr. 2/9/11, p. 130-31) when, in fact, Conahan and Ciavarella told Powell that the money was really going to Conahan and Ciavarella. (Tr. 2/9/11, p. 131). Thereafter, on instructions of Conahan, Powell directed Mericle to wire transfer $610,000 of the payment to an account of Robert Matta, Esq. rather than send the money directly to Conahan and Ciavarella, (Tr. 2/9/11, pp.132-33). Powell later paid Matta $10,000 for handling the transaction. (Tr. 2/9/11, pp.132-33). The $610,000 was then wire transferred from Matta to Beverage Marketing of PA, Inc., a corporation under the control of Michael Conahan. Conahan caused a false entry to be made in the books of Beverage Marketing to show a $610,000 consulting fee payment to "Joe Smith," thereby eliminating the $610,000 income to himself and Ciavarella. (Tr. 2/11/11, pp. 162-63). A total of $480,000 was then transferred to Mark Ciavarella from the Beverage Marketing account between January and July of 2003 and Ciavarella did not claim any of that income on his federal income tax return and did not disclose the source of the income on his statement of financial interests filed with the Administrative Office of the Courts. (Tr. 2/8/11, pp. 66-67, 106; Tr. 2/14/11, p. 59-60).

The remaining portion of the "referral fee" was wire transferred from Mericle to Powell. Powell received a Form 1099 from Mericle Construction

Company for that $387,600.[7]  Thereafter, to conceal the fact that money was

passing from Powell to Conahan, Conahan instructed Powell to write a check to

himself for $326,000 which was thereafter endorsed over to Conahan.  (Tr. 2/9/11,

pp. 135-137).  The check was thereafter deposited into an account in the name of

Barbara Conahan to further conceal the source of the funds.

The third element of the honest services wire fraud offense, that Ciavarella

transmitted or caused a wire transfer in interstate commerce, was not disputed at

trial.  The evidence showed that Conahan and Ciavarella, acting in concert with

one another, caused $610,000 to be wire transferred to Robert Matta, Esq., caused

$387,600 to be wire transferred to Robert Powell, and also caused the $610,000 to

be wire transferred to Beverage Marketing of PA, Inc., all as charged in

Racketeering Act One of Count One of the Indictment.  A total of $480,000 of this

---

[7]According to Powell, he paid taxes on the $387,600 portion of Ciavarella's
"referral fee"from Mericle, even though Powell did not keep most of the money.
(Tr. 2/9/11, pp. 134-137).  Powell's undisputed testimony that he paid the taxes on
the $387,600, taxes that otherwise would have been due from Ciavarella and
Conahan, and that he also paid $10,000 to Robert Matta, Esq. for Matta's role in
facilitating wire transfers from Mericle, to the benefit of Conahan and Ciavarella,
gives rise to a reasonable inference that, under the facts and circumstances proved
at trial, these payments by Powell were bribes to Conahan and Ciavarella to assure
their future favorable official actions in connection with PA Child Care, and/or in
connection with Powell's anticipated future appearances before the judges in his
capacity as an attorney.

money was then wire transferred into a bank account of Mark Ciavarella. (Tr. 2/8/11, pp. 66-67). The uncontested evidence at trial proved that all of the wire transfers crossed state lines. (Tr. 2/8/11, p. 75).

### b. Money Laundering Conspiracy

The jury's finding that Defendant Mark Ciavarella committed the offense of money laundering conspiracy as charged in Racketeering Act Thirteen of Count One is also not against the weight of the evidence and is supported by sufficient evidence.

"The elements of a conspiracy under 18 U.S.C. § 1956(h) are: (1) that an agreement was formed between two or more persons; and (2) that the defendant knowingly became a member of the conspiracy." United States v. Greenridge, 495 F.3d 85, 100 (3d Cir. 2007) . See also, Whitfield v. United States, 543 U.S. 209, 214 (2005) (the government need not prove an overt act in order to obtain a conviction under 18 U.S.C. § 1956(h)).

The elements of a substantive money laundering offense include: "(1) an actual or attempted financial transaction; (2) involving the proceeds of specified unlawful activity;[8] (3) knowledge that the transaction involves the proceeds of

---

[8]"Specified unlawful activity" includes bribery concerning programs receiving federal funds (18 U.S.C. § 666); mail fraud and wire fraud (18 U.S.C. § § 1341, 1343); and extortion under color of right (18 U.S.C. § 1951). See Title 18,

some unlawful activity; and (4) either an intent to promote the carrying on of specified unlawful activity or knowledge that the transactions were designed in whole or in part to conceal the nature, location, source, ownership, or control of the proceeds of specified unlawful activity." United States v. Omoruyi, 260 F.3d 291, 294-95 (3d Cir. 2001).

The trial evidence established beyond a reasonable doubt that Mark Ciavarella and Michael Conahan conspired to commit the offense of money laundering and that Mark Ciavarella knowingly joined the conspiracy intending to further its unlawful aims.

As to the first element of substantive money laundering, the trial evidence established that there were multiple financial transactions conducted jointly by Conahan and Ciavarella between 2003 and 2006 as part of the ongoing money laundering conspiracy charged in the Indictment. For example, after the wire transfers charged in Racketeering Acts 1.1, 1.2 and 1.3 were executed, additional wire transfers of $330,000 $75,000 and $75,000 were paid in 2003 to Mark Ciavarella's bank account from Beverage Marketing of PA, Inc., a company controlled by Michael Conahan. (Tr. 2/11/11, pp. 159-160).

---

United States Code, §§ 1956(c)(7)(A), 1956(c)(7)(D) and 1961(1).

Similarly, between 2004 and 2006, hundreds of thousands of dollars in checks drawn on a bank account of Pinnacle Group of Jupiter, LLC were deposited into bank accounts under the control of Mark Ciavarella and Michael Conahan.  Pinnacle Group of Jupiter was nominally owned by the wives of Mark Ciavarella and Michael Conahan but Michael Conahan was actually the person who gave all instructions regarding Pinnacle to the bookkeeper.  (Tr. 2/11/11 pp. 168-69).

The uncontested evidence also established that all of these payments were "financial transactions" affecting interstate commerce to the extent they involved wire transfers across state lines, or involved monetary instruments including checks and United States currency, or involved the use of financial institutions engaged in interstate commerce.

The financial transactions conducted jointly by Ciavarella and Conahan between 2003 and 2006 involved the proceeds of "specified unlawful activity, as required to establish the second element of money laundering."[9]

_____

[9]As previously noted in this brief, there was sufficient evidence to support the jury's finding that Mark Ciavarella and Michael Conahan executed an honest services wire fraud scheme through wire transfers relating to the $997,600 "finder's fee" as charged in Racketeering Acts 1.1, 1.2 and 1.3 of Count One.

The evidence established that the $610,000 and the $326,000 received by Ciavarella and Conahan from Powell in 2003 and all of the monies deposited to the account of Pinnacle Group of Jupiter as checks or wire transfers from Robert Powell and Robert Mericle between 2004 and 2006 were bribes and kickbacks paid to Conahan and/or Ciavarella and were the proceeds of mail fraud, a specified unlawful activity, which Ciavarella and Conahan executed, in part, through the mailing of fraudulent statements of financial interest to the Pennsylvania Administrative Office of the Courts relating to calendar years 2003, 2004, 2005 and 2006.  In fact, the jury convicted Ciavarella of the mail fraud counts of the Indictment relating to those years.   That the jury considered all of these payments to be bribes or kickbacks is clear from the Court's explicit instruction that the jury could not return a guilty verdict on the mail fraud counts "if you do not find that the government proved beyond a reasonable doubt that a bribe or a kickback was paid in connection with the alleged...mail fraud counts."  (Tr. 2/16/11, p. 83).

Standing alone, the substantial evidence supporting the mail fraud offenses of conviction is sufficient to establish that the financial transactions involved the proceeds of "specified unlawful activity." Additionally, although Ciavarella himself was acquitted of substantive wire fraud, bribery and extortion counts contained in Counts 3-6, 11-20 and 22-34 of the Indictment, the evidence was

31

nevertheless sufficient to establish that Conahan committed those offenses, thereby providing an independent basis to find that the financial transactions involved the proceeds of "specified unlawful activity."

For example, as previously discussed, even though Conahan had done nothing to earn a "finder's fee" from Mericle, the uncontested trial evidence showed that Michael Conahan was paid a portion of the $997,600 "finder's fee" Robert Mericle intended to pay to Mark Ciavarella in 2003. Conahan and Ciavarella also shared $590,000 received from Robert Powell in 2004 as purported "rent" paid to Pinnacle Group, which Powell testified he paid as a result of being extorted. Ciavarella also paid Michael Conahan a portion of the $1,000,000 and $150,000 received from Mericle in 2005 and 2006 respectively. Since Conahan had done nothing to deserve a "finder's fee" from Mericle, this evidence gives rise to the reasonable inference that Conahan received a continuing kickback and reward of Mericle payments for official actions Conahan took in 2001 and 2002 to facilitate the construction of the PA Child Care detention facility and to close the competing county-run facility.

Thus, as to Conahan, who was not Mericle's intended recipient for any "finder's fee," and who Powell testified extorted him, the evidence is sufficient to establish that all payments to Conahan at the direction of Ciavarella or in the form

of purported rent payments by Powell, were bribes, kickbacks or extortionate payments made in violation of Title 18, United States Code, §§ 666, 1341, 1343 or 1951.

The evidence established that Michael Conahan and Mark Ciavarella took joint measures to conceal the source of the crime proceeds that ultimately were deposited into Ciavarella's individual bank account and into an individual bank account controlled by Conahan.  These measures, involving checks and wire transfers, satisfy the third and fourth elements of the money laundering offense since they prove circumstantially Ciavarella's knowledge that the transactions involved the proceeds of some unlawful activity and that each transaction was designed in whole or in part to conceal the nature, location, source, ownership, or control of the proceeds of specified unlawful activity.

The evidence showed the joint measures included: causing money to pass through multiple intermediaries before it went into bank accounts Ciavarella and Conahan controlled; creating false records to make it appear as if $610,000 was paid by Beverage Marketing as consulting fees to "Joe Smith"; causing Robert Powell to write a check to himself for $326,000 which was then endorsed over to Michael Conahan; causing the creation of false records making it appear that payments by Robert Powell to Pinnacle Group of Jupiter were rent for a

33

condominium or a boat slip; creating false records and tax documents making it

appear as if payments from Robert Mericle to Pinnacle Group of Jupiter were

rental income; not disclosing the source of any of the income on statements of

financial interest for 2003 through 2006; and, not properly declaring the money on

their federal income tax returns for 2003 through 2006.

The trial evidence was sufficient to establish that wire transfers of $330,000,

$75,000 and $75,000 in 2003 originating from Beverage Marketing to a bank

account of Mark Ciavarella were designed to conceal the true source of the money

by making it appear as if Ciavarella was receiving the money from Beverage

Marketing when, in fact, the source of the money was actually Robert Powell who

had received the money from Robert Mericle.   Similarly, proof of the checks

totaling hundreds of thousands of dollars from Pinnacle Group of Jupiter which

were made payable to Cindy Ciavarella but deposited into a bank account in the

name of Mark Ciavarella individually was sufficient to establish that the

transactions were designed to hide the fact that Mericle and Powell were the true

sources of the payments.  (See Exhibit 23.1; Tr. 2/8/11, pp. 80-82).

2.    Count Two

Count Two of the Indictment charges that Mark Ciavarella conspired to

conduct or to participate in the conduct of an enterprise's affairs through a pattern

34

of racketeering activity, in violation of Title 18, United States Code, § 1962(d).

This offense has three elements:

> First:  That two or more persons agreed to conduct or to participate, directly or indirectly, in the conduct of an enterprise's affairs through a pattern of racketeering activity;

> Second:  That Mark Ciavarella was a party to or member of that agreement; and

> Third:  That Mark Ciavarella joined the agreement or conspiracy knowing of its objective to conduct or participate, directly or indirectly, in the conduct of an enterprise's affairs through a pattern of racketeering activity and intending to join together with at least one other alleged conspirator to achieve that objective; that is, that Mark Ciavarella and at least one other alleged conspirator shared a unity of purpose and the intent to achieve the objective of conducting or participating in the conduct of an enterprise's affairs through a pattern of racketeering activity.

See Third Circuit Model Jury Instruction 6.18.1962D.

The United States Supreme Court has held that the RICO conspiracy charge does not require proof that the defendant "himself committed or agreed to commit the two predicate acts requisite for a substantive RICO offense under § 1962(c)." Salinas v. United States, 522 U.S. 52, 61 (1997).[10]  The Supreme Court explained:

---

[10]At page 13 of his brief, citing United States v. Anguilo, 847 F.2d 956 (1st Cir. 1988), the Defendant incorrectly states the law as follows:  "the Government must prove that Mark Ciavarella agreed to commit an illegal act."  He also cites United States v. Cruz, 568 F.2d 781 (1st Cir. 1978) for the proposition that "[a] RICO conspiracy charge 'must charge at a minimum that each defendant agreed to commit two or more specified predicate crimes in addition to charging an agreement to participate in the conduct of our (sic) enterprise's affairs through a

A conspiracy may exist even if a coconspirator does not agree to commit or facilitate each and every part of the substantive offense.  The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of the other.  If conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators.

Id. at 63-64 (citations omitted).

The Court added that:

A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor.  He may do so in any number of ways short of agreeing to undertake all of the acts necessary for the crime's completion.  One can be a conspirator by agreeing to facilitate only some of the acts leading to the substantive offense.  It is elementary that a conspiracy may exist and be punished whether or not the substantive crime ensues, for the conspiracy is a distinct evil, dangerous to the public, and so punishable in itself.
It makes no difference that the substantive offense under § 1962(c) requires two or more predicate acts.  The interplay between subsections (c) and (d) does not permit us to excuse from the reach of the conspiracy provision an actor who does not himself commit or agree to commit the two or more predicate acts requisite to the underlying offense.

Id. at 65.

_____

pattern of racketeering activity.'" A review of the Cruz opinion suggests the Defendant cited it by mistake since the opinion relates to a violation of Title 21, United States Code, section 846 and there is no discussion of RICO law.  In any event, the Supreme Court's ruling in Salinas makes clear that the statement of the law set forth at page 13 of the Defendant's brief is incorrect since the government is not required to prove that the Defendant agreed to commit any predicate act himself.

36

In support of his argument that the verdict on Count Two was against the weight of the evidence and not supported by sufficient evidence, the Defendant relies on the same flawed argument he made as to Count One:

> the Government has not shown that the payment from Mericle to Ciavarella produced funds that came from illegal transaction.  Since Mericle, according to his testimony and the Government's assertions, did not offer a bribe or kickback, he could not have made an agreement with Ciavarella to commit an illegal predicate act.  Moreover, any agreement Ciavarella made with anyone else to transfer money was not a predicate act since the proceeds transferred were not derived from illegality.

<u>See</u> Defendant's Brief, p. 13.

The same evidence that supports the jury's verdict on Count One also supports the verdict on Count Two.  That evidence showed that Ciavarella and Conahan agreed to conduct or to participate, directly or indirectly, in the conduct of an enterprise's affairs through a pattern of racketeering activity; that Mark Ciavarella was a party to or member of that agreement; and that Mark Ciavarella joined the agreement or conspiracy knowing of its objective to conduct or participate, directly or indirectly, in the conduct of an enterprise's affairs through a pattern of racketeering activity and intending to join together with at least one other alleged conspirator to achieve that objective; that is, that Mark Ciavarella and Michael Conahan shared a unity of purpose and the intent to achieve the objective of conducting or participating in the conduct of an enterprise's affairs

37

through a pattern of racketeering activity.  The evidence is even more compelling as to Count Two since, under <u>Salinas</u>, the Government did not have to prove that Ciavarella agreed to himself perform any of the predicate racketeering acts and the evidence established that Ciavarella conspired with Conahan for Conahan to commit the charged racketeering activity.

### 3.    Count Twenty-One

In support of his motions for a new trial and for judgment of acquittal on the money laundering conspiracy charge contained in Count Twenty-One of the Indictment, the Defendant makes no reference to specific facts but rather offers only the following conclusory argument in support of the motions:

> Similarly, Count 21 should fail since no illegal funds were transferred, hidden or converted.  As the Government expert testified, funds legally obtained do not become tainted by transfers from one entity to another and ultimately to the defendant.

> Here the evidence and reasonable inferences were scant or non-existent and weigh in favor of a not guilty verdict on this count of conspiracy to commit money laundering.  Not only does the weight favor a not guilty verdict, but the evidence and reasonable inferences are insufficient to support a guilty verdict.

<u>See</u> Defendant's Brief, p. 14.

The Defendant's assertion that the Court should grant judgment of acquittal or a new trial on Count 21since "no illegal funds were transferred, hidden or

converted" is not supported by the evidence at trial as applied to the elements of the offense.[11]   The Government has already addressed the sufficiency of the evidence relating to the charge of money laundering conspiracy as charged in Racketeering Act 13 of Count One.  That discussion is hereby incorporated by reference.

          D.     The Mail Fraud Counts of the Indictment Are Consistent With the Supreme Court's Holding in Skilling v. United States

The jury found Defendant Mark Ciavarella guilty of four counts of honest services mail fraud as charged in Counts Seven through Ten of the Indictment. (Tr. 2/18/11, p. 12.).   The Indictment alleged that the scheme to defraud was executed by the Defendant's mailing of materially false statements of financial interests in 2004, 2005, 2006 and 2007.  See Superseding Indictment, pp. 43-44.

The Defendant has moved the Court for judgment of acquittal on Counts Seven through Ten arguing that "[t]he failure of Mark Ciavarella to file statements of financial interest does not run afoul of the Honest Services statutes as now

---

[11]Even if "no illegal funds were transferred, hidden or converted" as claimed by the Defendant, the result requested would not necessarily be warranted since Count 21 charges the Defendant with money laundering conspiracy.  The Government has only to prove that the Defendant participated in an agreement to commit a money laundering offense, not that the offense was actually committed.

limited by the Supreme Court to bribes and kickbacks..."  <u>See</u> Defendant's Brief, p. 15.[12]

In <u>Skilling v. United States</u>, 130 S. Ct. 2896 (2010), the Supreme Court held that the honest services fraud statute which defines a scheme or artifice to defraud to include "a scheme or artifice to deprive another of the intangible right of honest services" criminalizes "*only* the bribe-and-kickback core of the pre-McNally case law."  <u>Skilling v. United States</u>, 130 S. Ct. at 2905 (emphasis in original); 18 U.S.C. § 1346.

Defendant Ciavarella appears to argue, as he did in a pre-trial motion to dismiss the Indictment, that the filing of a false statement of financial interests with the Administrative Office of the Pennsylvania Courts cannot form the basis of an honest services prosecution under <u>Skilling</u>.  <u>See</u>, Defendant's Brief, pp. 14-16.

The government agrees that mere concealment of material information cannot form the basis of an honest services prosecution under <u>Skilling</u>.  Defendant Ciavarella's argument, however, neglects the fact that each honest services mail fraud count of the Superseding Indictment explicitly charges the Defendant with

---

[12]The Defendant made a similar argument in a pre-trial motion to dismiss the Indictment.  That motion was properly denied by the Court.

depriving the citizens and the Judiciary of their right to the honest and faithful services of the defendant through "bribery, kickbacks, and the concealment of material information." See, Superseding Indictment p. 42. The argument also neglects the fact that the Court explicitly instructed the jury that it could not return a guilty verdict on the mail fraud counts "if you do not find that the government proved beyond a reasonable doubt that a bribe or a kickback was paid in connection with the alleged...mail fraud counts." (Tr. 2/16/11, p. 83). Moreover, Defendant Ciavarella's argument neglects the fact that, as part of the honest services mail fraud charges, the government must not only prove bribes or kickbacks but also that the bribes or kickbacks were part of a "scheme or artifice to defraud." The proof at trial that the defendant filed false statements of financial interests with the Administrative Office of the Pennsylvania Courts was one way the government proved his intent to defraud and proved that the scheme was furthered through use of the mails.

Proof is required of a specific intent and the defendant (and his co-conspirators) must either have devised the fraudulent scheme himself or have willfully participated in it with knowledge of its fraudulent nature. United States v. Pearlstein, 576 F.2d 531, 537 (3d Cir. 1978) (citations omitted). Thus, evidence of concealment of material facts is pertinent to a determination of an intent to

41

defraud on Ciavarella's part. This evidence is in addition to evidence that the offense involved kickbacks and bribes. Moreover, it is consistent with the holding in Skilling since the problem with the Skilling indictment was not that it contained concealment/non-disclosure language but that it did so without alleging bribes and kickbacks. 130 S. Ct. at 2933.

In a mail/wire fraud prosecution, the Government must prove a willful participation in the fraudulent scheme with knowledge of its falsity. United States v. Tiller, 302 F.3d 98, 101-02 (3d Cir. 2002). The Indictment charged Defendant Ciavarella with having sent fraudulent statements of financial interests through the mails that furthered the fraud. The trial evidence proved that allegation. A mailing or wire that furthers the conspiracy/scheme to defraud by concealing the criminal activity and thereby assisting in the ongoing scheme to defraud is integral to the scheme and is admissible against the defendant to prove his active involvement in the scheme. In fact, even mailings made after the fruits of the scheme have been received may nevertheless fall within the statute if they serve to postpone the victims' ultimate complaint to the authorities, and therefore make the apprehension of the defendant less likely than if no mailings had taken place. United States v. Otto, 742 F.2d 104 (3d Cir. 1984) (citing United States v.

42

Lebovitz, 669 F.2d 894, 896 (3d Cir. 1982) (quoting United States v. Maze, 414

U.S. 395, 403 (1974)).

The inclusion of the allegation of conflict of interest/non-disclosure

language in setting forth one of the ways in which the scheme was furthered does

not violate the holding of Skilling.  It is simply one of the ways that the

Government chose to prove willful participation in the fraudulent scheme by

Ciavarella with knowledge of its falsity as required under Third Circuit law.

Tiller, 302 F.3d at 103.

The Defendant's argument fundamentally misconstrues the nature of the

mailing element of the offense since it assumes that each mailing/wire must

constitute an act of bribery or a kickback.  It is settled law that the mailing/wire

need not itself be the object of the scheme or even illegal as long as the mailing in

some way advances the actual scheme to defraud.  United States v. Quinn, 349

F.Supp. 232 (E.D.Wis.), affirmed, 481 F.2d 1406 (8th Cir. 1972).  If the purpose

of a scheme includes the attempts to conceal a bribe, the presence of the

concealment in the indictment will be upheld.  United States v. Steele, 685 F.2d

793 (3d Cir.), cert. denied, 459 U.S. 908 (1982).

Even where the mailings/wire communications contained no

misrepresentations, the mailing/wire is proper since it is not necessary that the

false representations were themselves transmitted by mail/wire. <u>United States v. Strauss</u>, 452 F.2d 375 (7th Cir. 1971). Indeed, the scheme need not contemplate the use of the mails/wires as an essential element of the scheme as long as use of the mails/wires to further the scheme was reasonably foreseeable. <u>Spira v. Nick</u>, 876 F. Supp. 533 (S.D.N.Y. 1995).

Thus, proof of the mailing to the Administrative Office of the Pennsylvania Courts in each count is perfectly permissible as proof of a mailing in furtherance of the bribery/kickback scheme, notwithstanding the fact that it also constituted a concealment/non-disclosure.

Allegations of concealment were appropriately charged in the Superseding Indictment since, among other reasons, they relate to Defendant Ciavarella's state of mind. Ciavarella's acts of concealing his receipt of bribes/kickbacks in his capacity as a judge for the Luzerne County Court of Common Pleas constitutes circumstantial evidence of his criminal intent to deprive the AOPC, the citizens of Luzerne County and the citizens of Pennsylvania of their right to his honest services by fraud. Subjective intent may be proven circumstantially by reference to evidence of the employee's words, conduct, and the context in which his actions took place. <u>Resolution Trust Corp. v. Fidelity and Deposit Co. of Maryland</u>, 205 F.3d 615, 641 (3d Cir. 2000). As a state of mind, criminal intent is often difficult

44

to prove and, because it is abstract and private, intent is revealed only by its connection with words and conduct. Thus evidence of both words and conduct is probative of intent and, because the context illuminates the meaning of words and conduct, evidence of the circumstances surrounding such words or conduct, including the motive of the actor, is admissible. Id. Further, if criminal laws could not look to intent and motivation to distinguish lawful conduct from unlawful conduct, virtually every crime with a *mens rea* requirement would be invalidated on the ground that it constitutes a "thought crime." United States v. Tykarsky, 446 F.3d 458, 472 (3d Cir. 2006). In making the determination regarding subjective intent concerning an act of concealment, the court should consider the surrounding circumstantial evidence of intent. Rozen v. Bezner, 996 F.2d 1527, 1533-34 (3d Cir. 1993). See, e.g., In re Kauffman, 675 F.2d 127, 128 (7th Cir. 1981) ( intent must be gleaned from inferences drawn from a course of conduct) (citations omitted).

Thus, Ciavarella's concealment of the payments on his financial statements to the AOPC constituted direct evidence of his false statements and circumstantial evidence of his criminal intent to commit the crimes charged. Thus, Ciavarella's motions for judgment of acquittal and to arrest judgment should be denied.

45

E.    The Defendant is Not Entitled to Judgment of Acquittal on Counts One, Two and Twenty-One On Statute of Limitations Grounds

1.    The Defendant Has Waived a Statute of Limitations Defense on Counts One, Two and Twenty-One

The statute of limitations in a criminal case does not go to the jurisdiction of the court but is an affirmative defense that will be considered waived if not raised in the district court.  United States v. Karlin, 785 F.2d 90, 92-93 (3d Cir. 1986), cert. denied, 480 U.S. 907, 107 S. Ct. 1351 (1987).[13]  As the United States Court of Appeals for the Third Circuit has made clear, when a defendant fails to raise the statute of limitations as a defense before or at trial nor asks for any jury instructions on the defense, the defense is waived and is not subject to direct review.  See United States v. Oliva, 46 F.3d 320, 325 (3d Cir. 1995) citing United States v. Karlin, 785 F.2d 90, 90-93 (3d Cir. 1986)(where the defendant neither raised the statute of limitations as a defense before or at trial nor asked for any jury

---

[13]The Defendant has moved the Court to arrest judgment on Counts 1, 2 and 21, arguing that the Court does not have jurisdiction since the offenses allegedly occurred outside of the applicable five-year statute of limitations.  See Defendant's Motion for Arresting Judgment, p. 2.  The Defendant cites no legal authority in support of this request and controlling precedent in this Circuit holds that the statute of limitations is an affirmative defense that does not affect the Court's jurisdiction.  See United States v. Karlin, 785 F.2d 90, 92-93 (3d Cir. 1986) Thus, the Defendant's motion to arrest judgment on statute of limitations grounds must be denied.

46

instructions on the defense, the defense is waived and a court is prevented from reaching the issue on direct review).

Although the Defendant's pre-trial motions challenged some counts of the Indictment on statute of limitations grounds, at no time prior to trial or at trial did the Defendant challenge Counts 1, 2 or 21 on statute of limitations grounds. The Defendant also failed to request a jury instruction on statute of limitations and did not object to the charge given by the Court which did not contain a statute of limitations instruction. Thus, the Defendant has waived a statute of limitations defense on Counts One, Two and Twenty-One and his motion for judgment of acquittal on that ground should be denied.

 2. The Statute of Limitations Did Not Run on Counts One, Two and Twenty-One

Even if the Defendant had not waived the statute of limitations defense as to Counts One, Two and Twenty-One, his motion for judgment of acquittal nevertheless would lack merit since the statute of limitations had not run on any of the offenses.

The statute of limitations on a charge of conspiracy runs from the last overt act during the existence of the conspiracy. Fiswick v. United States, 329 U.S. 211, 216 (1946). "Conspiracy is a continuing offense and a jury may consider each and

47

all of a defendant's actions in furtherance of the conspiracy so long as the Indictment is brought within five years of the last overt act." United States v. Jake, 281 F.3d 123 n. 6 (3d Cir. 2002), citing United States v. Johnson, 165 F.2d 42, 45 (3d Cir. 1947).

The ongoing offense of money laundering conspiracy was charged as a predicate act of racketeering in Count 1 of the Indictment.  Racketeering Act 13 of Count 1 of the Superseding Indictment alleges that the Defendant and Michael Conahan engaged in the money laundering conspiracy "from in or about December, 2001 to on or about September 9, 2009." See Superseding Indictment, p. 27.  An ongoing money laundering conspiracy was also thus one of the racketeering acts that was the object of the racketeering conspiracy charged in Count 2.  The ongoing offense of money laundering conspiracy was also the offense charged in Count 21 of the Superseding Indictment.   Count 21 of the Superseding Indictment alleges the offense occurred "[f]rom on or about January 1, 2001, and continuing up to on or about the date of this Superseding Indictment." See Superseding Indictment, p. 48.

The trial evidence established numerous acts committed by Michael Conahan and Mark Ciavarella in furtherance of the money laundering conspiracy that were committed within five years of September 9, 2009 when a grand jury

48

first charged Defendant Ciavarella with money laundering conspiracy. For

example, the trial evidence established that, after deposits to the account of

Pinnacle Group of Jupiter of checks and wire transfers from Robert Powell and

Robert Mericle which were the proceeds of bribes, kickbacks and extortion,

checks payable to Cindy Ciavarella were issued by Pinnacle and deposited to

Mark Ciavarella's individual bank account in the amounts of $50,000 (September

29, 2004), $350,000 (July 20, 2005) and $2,500 (December 8, 2005).

(Government Exhibit 23.1). Similarly, to conceal their receipt of a bribe/kickback,

on February 3, 2006, Conahan and Ciavarella caused Robert Powell to issue a

letter directing Robert Mericle to transfer $150,000 to the account of Pinnacle

Group of Jupiter. (Tr. 2/9/11, pp. 165-67; Government Exhibit 7.4). Similarly, to

make it appear as if the $150,000 was rental income, Ciavarella and Conahan

created false documents, including patently false tax forms that were signed in

2007. During his trial testimony, Defendant Ciavarella himself admitted that he

filed some of these forms with the Internal Revenue Service with full knowledge

that they were false. These are just a few examples of many acts Ciavarella and

Conahan took within five years of the Indictment which were in furtherance of

their on-going money laundering conspiracy.

49

F.    <u>The Defendant's Motion for Recusal Should Be Denied</u>

The Defendant has once again moved for recusal of the judge.  In support of the motion, he incorporates the reasons set forth in his pre-trial recusal motion and the brief filed in support thereof.  It is the Government's position that the Court properly denied the pre-trial motion for recusal.  Since the Defendant has offered no additional reasons in support of his post-trial motion for recusal, the Government will incorporate by reference the Government's response to the Defendant's pre-trial motion and will once again respectfully request that the Court deny the motion.

IV.    <u>CONCLUSION</u>

For the foregoing reasons, it is respectfully requested that the Defendants' post-trial motions be denied and that the Court promptly schedule a sentencing date.

Respectfully submitted,
PETER J. SMITH
UNITED STATES ATTORNEY

/s/ Gordon A.D. Zubrod
/s/ Michael Consiglio
/s/ William S. Houser
Assistant U.S. Attorneys
235 N. Washington Avenue
Scranton, Pennsylvania  18501
Dated: April 18, 2011        570-348-2800

50